## In re M. & H. GORDON.

### (District Court, S. D. New York. October 25, 1917.)

1. BANKRUPTCY ⚎376—COMPOSITION—TERMS.

 The fundamental theory of a composition agreement is that all creditors shall be treated alike and none shall have any advantage, and therefore a proposed composition, whereby the bankrupt agreed to pay one creditor the amount of expenditures incurred in investigating the financial affairs of the bankrupt, in addition to his pro rata share, cannot be confirmed, for the creditor, in making the expenditure, acted on its own risk, and to confirm the composition would open the door to preferring one creditor above another.

2. BANKRUPTCY ⚎377—COMPOSITION—WITHDRAWAL OF CLAIM.

 Under Bankr. Act July 1, 1898, c. 541, § 12b, 30 Stat. 549 (Comp. St. 1916. § 9596), declaring that an application for a confirmation of a composition may be filed in the court of bankruptcy after, but not before, it has been accepted in writing by a majority in number of all creditors whose claims have been allowed, a creditor, for the purpose of enabling a bankrupt to secure confirmation of a proposed composition, may withdraw his claim, preferring that arrangement to an acceptance of the composition, and the creditor whose claim was withdrawn will not be counted as one in computing the number whose approval the bankrupt was bound to obtain.

3. BANKRUPTCY ⚎379—COMPOSITION—RENEWAL OF OFFER.

 Where a proposed composition was for the best interest of creditors, the bankrupt, though confirmation was denied because, in compliance with the demand of one creditor, he agreed to make a payment to such creditor of certain expenses which would operate as a preference, after such creditor's claim is withdrawn, is entitled to renew his application for confirmation of composition.

 In Bankruptcy. In the matter of the bankruptcy of M. & H. Gordon. On motion to confirm report of special master recommending that proposed composition be confirmed, to which Liberman & Co., a creditor, objected. Special master's report and proposed composition rejected, and matter returned to special master.

 Isaac Marks, of New York City, for the motion.
 Harry N. Wessel, of New York City, opposed.

 MAYER, District Judge. This is a motion to confirm the report of the special master on specifications of objection to a proposed composition. The special master has recommended that the composition be confirmed, and one of the creditors has objected to confirmation on several grounds.

 The bankrupt duly offered a composition to his creditors of 25 per cent. on the dollar in cash. One of the creditors, the Gera Mills, was represented by its attorney, Mr. Saul S. Myers, who took proceedings on behalf of his client as an intervening creditor, and, in the course of those proceedings, incurred a bill of $450 to $500 to certified public accountants employed by him in the investigation of the financial affairs of the bankrupt. Mr. Myers, on behalf of his client, also incurred another bill of a little over $100 to a detective for making certain investigations. When Mr. Marks, the attorney for the bankrupt,

interviewed Mr. Myers with a view of obtaining the acceptance of the proposed composition by the Gera Mills, Mr. Myers stated that the Gera Mills could not afford to accept the composition unless these disbursements on their part were paid by the bankrupt. The result of the interview between Mr. Marks and Mr. Myers on behalf of their respective clients was that Mr. Marks promised on behalf of the bankrupt that the bankrupt would reimburse the client of Mr. Myers for this outlay of approximately $650 to the accountants and the detective. The special master stated in his opinion:

"These being the facts, it does not seem to me that it can properly be said that the Gera Mills are to receive any greater amount than the 25 per cent. paid to all the creditors."

[1] The fundamental theory and purpose of a composition agreement is that all creditors shall be treated alike, and that none shall have any advantage, secret or otherwise, over the other. The bankrupt was not under any legal obligation to pay the bills incurred by one of the creditors in its investigations. The money thus expended by the creditor was at its own risk. If, as the result of such investigation, the estate had been benefited and assets had been discovered, then the creditor was at liberty to apply to the court for appropriate compensation; but as against the bankrupt the creditor had no claim in this regard, either of a legal or a moral nature.

When, therefore, the bankrupt, through his attorney, promised to make the creditor whole on the creditor's expenditures, after the creditor through its attorney had refused to sign unless made whole, the very thing was done which vitiates this composition agreement. It is specious to say, because as a net result of such a transaction the creditor will not receive more than 25 per cent. on his claim, that he shares equally with other creditors and gains no advantage. As the matter stood when the negotiation began, the creditor was out of pocket the amount of his claim against the bankrupt plus this expenditures, and the agreement to reimburse is an agreement to pay this same creditor more than 25 per cent. of any claim which it could prove or have allowed to it in bankruptcy.

It can readily be seen where such a practice will lead, if followed to its logical conclusion. For instance, an attorney could very well say that his client had incurred expenses for his advice and services as an attorney, and the client could refuse to sign a composition agreement unless the unliquidated fees of his attorney were paid. The possibilities of such practice and procedure could be further illustrated, but what has been pointed out is sufficient for the purpose of making clear that any arrangement which contemplates the payment to one creditor of one cent more than is to be paid to another creditor in the same class is the kind of an arrangement which the law will not permit, and which will result in the disapproval by the court of a composition agreement.

[2] Another specification is interposed because of the following facts: The Garfield National Bank filed a claim, which was allowed. When Mr. Marks, attorney for the bankrupt, saw the attorney of the bank, the latter stated that the bank was not opposed to the carrying

out of the composition, but that its disposition was not to sign an acceptance, but the bank's attorney stated that, instead of signing, he would withdraw the claim of the bank. If the claim stands as allowed, then the bankrupt would not have a majority in number and amount of the claims accepting the composition. If the claim may be withdrawn, then the bankrupt has the necessary majority. The contention of the objecting creditor is based on the language of section 12b, of the Bankruptcy Act:

"An application for the confirmation of a composition may be filed in the court of bankruptcy after, but not before. it has been accepted in writing by a majority in number of all creditors whose claims have been allowed, which number must represent a majority in amount of such claims. * * *" Comp. St. 1916, § 9596.

There is nothing in this section which prevents a creditor from withdrawing a claim at any time he pleases, provided, of course, such withdrawal is in good faith and without fraud or other wrongful agreement or means. There is nothing in the record which suggests that this arrangement with the bank was other than proper and fairly obtained as the result of the appeal of Mr. Marks on behalf of his client to the attorney for the bank.

[3] From the financial standpoint it seems to me that the offer is in the best interest of the creditors. It will be an undue hardship on this bankrupt if, because of the transaction with the Gera Mills, the composition agreement should fail. The bankrupt did not initially offer to pay this creditor the expenses incurred, but only did so after the creditor made such payment a condition of its consent. If, therefore (now that the view of the court is understood), this arrangement is nullified, I see no reason why an application to confirm the composition agreement should not be entertained.

In the circumstances I shall return the matter to the special master, with instructions to take further proof in respect of the arrangement, if any, to be made between the bankrupt and the Gera Mills. This is another way of stating that the bankrupt can ascertain whether the Gera Mills will sign on the absolute and unqualified condition that it is to receive, under the composition agreement, 25 per cent. and no more.

Settle order on one day's notice.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes