This is a suit by the receiver of Frobac Silk Company to set aside four mortgages made by that company to the defendant, Hamilton Trust Company, and to avoid a sale under the foreclosure of two of the mortgages. Relief is sought on the ground that the silk company was insolvent when it made the mortgages and was known so to be by the trust company, and on the further ground that the mortgages were taken by the trust company as part of a scheme to defraud the creditors of the silk company.
On May 1st, 1926, three creditors filed in the United States district court for the district of New Jersey, a petition in bankruptcy against the silk company. On May 15th, and before any adjudication, the company filed in that court an offer of composition with its creditors, namely, to pay *Page 424 
twenty per cent. of their claims in cash and fifteen per cent. to be evidenced by notes payable in from one to three years. By virtue of the Bankruptcy act, it was necessary, before the court could consider the composition offer, that the alleged bankrupt deposit, subject to the order of the court, the consideration to be paid to the creditors and funds to cover costs. The silk company made its offer pursuant to an understanding with the trust company that the trust company would advance the necessary funds on mortgage security. Accordingly, on June 30th, 1926, the funds were provided and the four mortgages now in question were executed and delivered. Six days later, the district court confirmed the composition. In October, an insolvency bill was filed in chancery by creditors against the silk company and the silk company was adjudged insolvent and a receiver appointed. On December 6th, the receiver filed his bill in the present suit. Thereafter, with the consent of all parties, the property in controversy was sold by a special master and the litigation transferred to the proceeds of the sale, some $35,000.
Section 64 of the Corporation act (Comp. Stat. p. 1638) declares that any conveyance made by an insolvent corporation shall be void as against creditors, unless the conveyance is made for a valuable consideration to one without notice of the insolvency. Mortgages are conveyances within the scope of the section. The silk company was obviously insolvent when the mortgages were executed; the hope that by approval of the composition, solvency would be restored, was slight. The situation was known to the trust company. If section 64 applies, the mortgages were void as to creditors. Now a federal statute overrides state acts conflicting with it. Section 12 of the Federal Bankruptcy act authorizes bankrupts to offer terms of composition to creditors and requires that the bankrupt, before applying for confirmation of the composition, shall deposit the consideration to be paid to the creditors. If this statute, by fair implication, empowers the bankrupt to sell or mortgage its property in order to realize funds to make the required deposit, then a conveyance or mortgage so authorized is valid despite section 64 of the *Page 425 
Corporation act of New Jersey. Or if section 64 prevents the administration of a bankrupt's estate in the manner prescribed by congress, then and to that extent the operation of section 64 is suspended.
Before 1910, a composition could not be offered until there had been an adjudication of bankruptcy. The adjudication is immediately followed by the appointment of a trustee in whom title to all the bankrupt's property vests by operation of law as of the time of the adjudication. Therefore, when a bankrupt before the amendment of 1910, offered a composition and made the necessary deposit, he was already deprived of title and scarcely in a position where he could mortgage or convey his property in order to obtain funds to make the deposit. Of course, he could enter into a contract to execute a mortgage or conveyance upon the approval of the composition or could execute a mortgage or deed which would become effective when the title revested upon confirmation of the composition. The amendment of 1910 (36 Stat. at L. 839 § 5), so far as it relates to this subject, merely authorizes an offer in composition before the adjudication and provides for a stay until the offer may be acted upon by the court. So far as this legislative history goes, it does not tend to indicate that congress intended that the bankrupt should have power to execute a mortgage as security for funds borrowed for the purpose of the composition, but it does indicate that compositions are increasingly regarded by congress with favor.
More important than a study of the history of the statute is a consideration of the situation which ordinarily exists when a composition is offered, for this situation must have been considered by congress. The United States supreme court inZavelo v. Reeves, 227 U.S. 625; 33 S.C. 365, has stated: "The act, of course, contemplates that the bankrupt may acquire the money required for the purpose of the composition by the use of his credit." The credit of a bankrupt necessarily is not very good. The composition offer itself is a confession that he cannot pay his creditors in full. Of course, if the proposed composition is small enough, credit may be restored at the expense of the old creditors, but if the *Page 426 
offer is fair to the creditors, it must represent approximately the liquidation value of the entire estate. Adler v. Jones,109 Fed. Rep. 967; Fleischmann Devine, Inc., v. Saul WolfsonDry Goods Co., 299 Fed. Rep. 15. Can it be supposed that a bankrupt corporation can secure funds sufficient to make such an offer on its general credit without the specific pledge of any of its property? I think not. The more a bankrupt is restricted in the amount it can borrow, the less it can offer its creditors. It needs no discussion to show that the abilty to give a mortgage, increases the borrowing capacity of the bankrupt. It seems clear to me that congress must have intended that a bankrupt corporation could mortgage its property or could sell it outright in order to realize funds for the purpose of a composition. A rule prohibiting such a mortgage or sale would operate to the detriment of creditors by reducing the amount which might be offered them; it would hinder the administration of the estate and the distribution of the liquidation value thereof in the manner intended by congress. Of course, where, as here, part of the consideration offered creditors is in the form of notes payable in the future, the fact that the bankrupt has mortgaged its assets to raise the cash consideration offered, makes the notes less attractive, but that is one of the factors to be considered by the court of bankruptcy in deciding whether to confirm the composition.
I conclude that a mortgage executed by an insolvent corporation against which is pending a petition in bankruptcy, is not invalidated by section 64 of the Corporation act, when the mortgage is created to secure funds borrowed for the purpose of a composition which is later approved by the federal district court.
It appears that the mortgages secured not only funds used for the composition, but also an antecedent debt due to the trust company. Whether the mortgages were valid beyond the amount actually advanced for the composition, I need not inquire, since the fund realized by the sale of the property is less than that amount. *Page 427 
I have studied with care the evidence presented in support of the charge of express fraud. It seems unnecessary to repeat it. Fraud must be proved. The evidence at most gives rise only to suspicion. It does not establish the charge. The bill of complaint will be dismissed.